IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RYAN RICHMOND,               :
                             :
        Plaintiff,            :
                             :
    v.                        :      Civ. No. 14-806-LPS
                             :
CORRECT CARE SOLUTIONS        :
LLC, et al.,                  :
                             :
        Defendants.           :

Ryan Richmond, Howard R. Young Correctional Center, Wilmington, Delaware, Pro Se Plaintiff.

Daniel A. Griffith, Esquire, Whiteford, Taylor & Preston LLC, Wilmington, Delaware. Counsel for Defendants Correct Care Solutions LLC and Pamela Magee.

Stuart B. Drowos, Deputy Attorney General Deputy, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendant Matthew Fisher.

Ophelia Michelle Waters, Deputy Attorney General Deputy, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendants Correctional Officer Glick, Correctional Officer Malloy, and Staff Lt. Farrington.

**MEMORANDUM OPINION**

March 12, 2019
Wilmington, Delaware

STARK, U.S. District Judge:

## I. INTRODUCTION

Plaintiff Ryan Richmond ("Plaintiff"), an inmate at the Howard R. Young Correctional Center in Wilmington, Delaware, filed this action pursuant to 42 U.S.C. § 1983. He appears *pro se* and has been granted leave to proceed *in forma pauperis*. (D.I. 6) He filed this action pursuant to 42 U.S.C. § 1983.[1] (D.I. 3, 9, 10) The Court has jurisdiction by reason of a federal question pursuant to 28 U.S.C. § 1331. Presently before the Court are Defendants' motions for summary judgment. (D.I. 88, 94) Plaintiff opposes the motion for summary judgment filed by Medical Defendants. (D.I. 96) He did not file an opposition to State Defendants' motion for summary judgment.

## II. BACKGROUND

Plaintiff's main complaints are that Medical Defendants did not provide him physical therapy in a timely manner following his discharge from Christiana Hospital and they did not provide continuing treatment for sciatic nerve damage in his left leg; and further that State Defendants removed, or did not allow, Plaintiff's medically ordered physical therapy treatment walks. For most of the relevant period, Plaintiff was a pretrial detainee. His status changed on May 15, 2014, when he pled guilty to several criminal charges and was immediately sentenced on one criminal count. *See Richmond v. State*, 2016 WL 6092472, at *1 (Del. Oct. 18, 2016). On October 10, 2014, Plaintiff was sentenced on the remaining counts. *See id.*

The Complaint alleges that Plaintiff was discharged from Christiana Hospital and into the custody of the Howard R. Young Correctional Institution ("HRYCI") in Wilmington, Delaware. (D.I. 3 at 4) Next, Plaintiff was transferred to the James T. Vaughn Correctional Center ("VCC") in

---

[1] When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

1

Smyrna, Delaware. (*Id.*) Plaintiff alleges that his discharge papers indicated he was to receive physical therapy three to four times per week, the express orders were given to medical personnel at the VCC, and the physical therapy was delayed for non-medical reasons. (*Id.* at 4, 6) Plaintiff states that he had nine physical therapy sessions from September 2, 2012 through January 2, 2013. (*Id.* at 4) Plaintiff alleges that Defendant Pamela Magee, a nurse practitioner, failed to order physical therapy for Plaintiff at his housing unit and her unprofessionalism placed him in extreme pain and discomfort and caused loss of a very important body part. (D.I. 9 at 5)

The record reflects that on August 25, 2012, Plaintiff was admitted to Christiana Hospital in Newark, Delaware, for multiple gunshot wounds that resulted in sciatic nerve damage and injuries to internal organs, including the liver, bladder, and jejunum. (D.I. 10 at 40) Plaintiff underwent surgery, was treated, and remained at Christiana Hospital until September 9, 2012, when he was transferred to the VCC in Smyrna, Delaware. (*Id.* at 41-42) Defendant Correct Care Solutions, LLC ("CCS") was the contract medical service provider for the Delaware Department of Correction ("DOC") during this time and through June 30, 2014.[2]

While hospitalized, Plaintiff received physical therapy. (D.I. 10 at 34-36) The September 6, 2012 daily documentation note indicates that Plaintiff would be discharged and the plan for "PT anticipated treatments, needs" was "discharge/discontinue PT treatment." (*Id.* at 36) On September 10, 2012, while housed in the VCC infirmary, nurse practitioner Munda ("Munda") examined Plaintiff and noted pain and foot drop in the left lower extremity. (*Id.* at 65-66) Munda made an outpatient referral request for physical therapy. (*Id.* at 66). The request was entered the same day, and approved the next day. (*Id.*) Medical notes for Plaintiff's follow-up visit with a

---

[2] The general healthcare contract with CCS expired on June 30, 2014. *Guilfoil v. Correct Care Solutions*, 2016 WL 5024190, at *3 (D. Del. Sept. 15, 2016) (citing http://doc.delaware.gov/news/pdfs/14press0625.pdf (Sept. 10, 2016)).

2

consulting physician on October 1, 2012 state, "refer ... for EMG to evaluate LLE neuropathy PT/OT for left foot neuropathy." (*Id.* at 67) Pain medication was added for Plaintiff's complaints of pain in the left lower extremity. (*Id.*)

Plaintiff was seen by a neurologist on November 12, 2012 for sciatic nerve damage related to the gunshot wounds and an EMG was conducted. (D.I. 90 at A-099) The sciatic nerve pain was managed "on low dose Neurontin." (*Id.* at A-97, 100, 122, 125, 127) On April 19, 2013, Plaintiff had a consultation with an outside urologist who ordered a CT scan of Plaintiff's abdomen and pelvis to rule out a renal lump or mass, possibly related to the multiple gunshot wounds suffered in August of 2012. (*Id.* at A-105-06) The CT scan was ordered but did not take place because Plaintiff was "argumentative." (*Id.* at A-101-02, 106) Later, Plaintiff cancelled the CT scan because he did not want it. (*Id.* at A-125, 146)

On May 22, 2013, Dr. Louise Desrosiers made an outpatient referral request for onsite physical therapy to treat Plaintiff's left foot drop and muscular atrophy. (D.I. 10 at 71) Plaintiff was discharged from the VCC infirmary on May 28, 2013. (D.I. 90 at A-125)

Plaintiff submitted a medical grievance on November 25, 2013, to receive physical therapy. (D.I. 10 at 6) A December 18, 2013 informal resolution indicates that Magee investigated the matter and reported that Plaintiff was scheduled to see the provider. (*Id.* at 4) The grievance was upheld on appeal, "specifically that the medical vendor provide a physical therapy evaluation of the grievant. The medical vendor should ensure accurate and timely delivery of services." (D.I. 10 at 2, 12)

Plaintiff received physical therapy exercises in late January 2014. (D.I. 10 at 11) Plaintiff received physical therapy on March 14, 17, and 24, April 4, 16, and 28, May 7 and 14, and June 11, 2014, to treat decreased range of motion and strengthen the legs. (D.I. 90 at A-154-158) Plaintiff showed improvement during the treatment and was ordered to remain consistent with his home

3

exercise program ("HEP") and follow-up with physical therapy every one-to-two weeks. (*Id.*) As of June 11, 2014, Plaintiff denied any pain whatsoever. (*Id.* at A-158)

A June 25, 2014 progress note indicates that Plaintiff was on a regimen of daily HEP and would have a physical therapy follow-up in two to three weeks for "facilitation, gait training and to modify HEP as needed." (D.I. 90 at A-047) Plaintiff reported no difficulty with his HEP and it was noted he had no foot drop. (*Id.*) In July, Plaintiff complained of pain and asked if it was due to not having physical therapy right after the injury. (*Id.*) Plaintiff was assured it was not, but also that it would take time for the nerve to regrow. (*Id.*) A little over a month later, on August 6, 2014, Plaintiff was discharged from physical therapy with orders to continue with HEP indefinitely. (*Id.*) By this time, CCS was no longer the contract medical care provider.

Plaintiff alleges that following his September 2012 transfer to the VCC, Defendants C/O Fisher ("Fisher") and C/O Glick ("Glick") harmed him when they removed his physician-ordered physical therapy treatment medical walks. (D.I. 9 at 5, 8) Plaintiff alleges that Defendant C/O Malloy ("Malloy") authored a memo with instructions to restrain Plaintiff with waist chains and shackles during recreational therapeutic walks that overrode the requests and orders of physicians and medical staff for Plaintiff to "undergo the treatments to repair nerve damages in the left leg with therapeutic walks and exercises." (*Id.* at 6) Plaintiff alleges that Malloy sent Defendant Staff Lt. Farrington ("Farrington") the memo and Farrington thereafter contacted the supervisor of the infirmary to cancel all therapeutic walks and recreation. (*Id.* at 7)

The record reflects that Matthew Dutton ("Dutton"), an institutional grievance chairperson, conducted a thorough search and review of the DOC computer database for any and all grievances submitted by Plaintiff from September 1, 2012 through June 30, 2015. (D.I. 95-1) Dutton did not locate any grievances submitted by Plaintiff against any of the State Defendants during that time-frame. (*Id.*)

Medical Defendants move for summary judgment on the grounds that Plaintiff has failed to: (1) present any evidence that CCS or Magee violated his constitutional rights; (2) present an expert opinion to support his constitutional claims; or (3) present evidence that CCS maintained a policy or custom that caused Plaintiff constitutional harm. (D.I. 88, 89) Plaintiff opposes the motion. (D.I. 96)

State Defendants move for summary judgment on the grounds that: (1) Plaintiff's due process rights under the Fourteenth Amendment were not violated by State Defendants; (2) the claims are barred by the Eleventh Amendment and the doctrine of sovereign immunity; (3) the claims are barred by the doctrine of qualified immunity; (4) the claims are barred by the State Tort Claims Act; and (5) Plaintiff failed to exhaust his administrative remedies as is required under the Prison Litigation Reform Act. (D.I. 94, 95) Plaintiff did not file an opposition to State Defendants' motion.

## III. LEGAL STANDARDS

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its

5

burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the nonmoving party. *Anderson*, 477 U.S. at 252.

Plaintiff did not file a response to State Defendants' motion. Regardless, the Court will not grant the entry of summary judgment without considering the merits of State Defendants' unopposed motion. *See Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991) (holding that

district court should not have granted summary judgment solely on basis that motion for summary judgment "was not opposed").

IV. DISCUSSION

A. Medical Needs

Plaintiff contends Medical Defendants did not provide continuing treatment for his sciatic nerve condition and delayed in providing physical therapy. Because Plaintiff was a pretrial detainee for most of the relevant period, his claims are governed by the Fourteenth Amendment. "The Supreme Court has concluded that the Fourteenth Amendment affords pretrial detainees protections 'at least as great as the Eighth Amendment protections available to a convicted prisoner;'" the Court of Appeals for the Third Circuit evaluates medical indifference claims of both pretrial detainees and convicted prisoners under the same standard. *See, e.g., Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003) (quoting *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983)).

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103-105 (1976). In order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Id.* at 104; *see also Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

"[A] prisoner has no right to choose a specific form of medical treatment," so long as the treatment provided is reasonable. *Lasko v. Watts*, 373 F. App'x 196, 203 (3d Cir. Apr. 10, 2010) (quoting *Harrison v. Barkley*, 219 F.3d 132, 138-140 (2d Cir. 2000)). Also, "mere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation. *Spruill v. Gillis*, 372

7

F.3d 218, 235 (3d Cir. 2004) (citations omitted). An inmate's claims against members of a prison medical department are not viable under § 1983 where the inmate receives continuing care, but believes that more should be done by way of diagnosis and treatment and maintains that options available to medical personnel were not pursued on the inmate's behalf. *See Estelle*, 429 U.S. at 107.

A prison official may, however, manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Id.* at 104-05. A delay or denial of medical treatment claim is approached differently than an adequacy of care claim. *See U.S. ex rel. Walker v. Fayette Cty.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979).

> Unlike the deliberate indifference prong of an adequacy of care claim (which involves both an objective and subjective inquiry), the deliberate indifference prong of a delay or denial of medical treatment claim involves only one subjective inquiry – since there is no presumption that the defendant acted properly, it lacks the objective, propriety of medical treatment, prong of an adequacy of care claim. Absent that objective inquiry, extrinsic proof is not necessary for the jury to find deliberate indifference in a delay or denial of medical treatment claim. All that is needed is for the surrounding circumstances to be sufficient to permit a reasonable jury to find that the delay or denial was motivated by non-medical factors. *See, e.g., Durmer v. O'Carroll*, 991 F.2d 64, 68–9 (3d Cir. 1993); *United States v. Michener*, 152 F.2d 880, 885 (3d Cir. 1945) ("[I]t is for the jury to determine the weight to be given to each piece of evidence . . . particularly where the question at issue is the credibility of the witness.").

*Pearson v. Prison Health Serv.*, 850 F.3d 526, 537 (3d Cir. 2017).

Plaintiff argues that his claims amount to violations of his constitutional rights. His opposition to Medical Defendants' motion for summary judgment consists solely of argument and is not accompanied by a sworn affidavit or signed under penalty of perjury. Plaintiff, as the nonmoving party, cannot simply assert factually unsupported allegations to meet his burden at the summary judgment stage. *See Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989).

There is a paucity of evidence relative to Plaintiff's claim against Magee. Plaintiff alleges that Magee was informed of his injuries, and she failed to order him physical therapy. However, there is no evidence of record to support the claim. Notably, Magee is not mentioned in Plaintiff's

8

opposition to the motion for summary judgment. The record indicates that Magee investigated Plaintiff's November 25, 2013 grievance and reported in the informal resolution that he was scheduled to see a provider. Her status as an investigator falls far short of supporting Plaintiff's claim. The record does not indicate that Magee delayed or denied necessary medical care. Rather, it indicates she investigated his grievance. No reasonable jury could find in favor of Plaintiff on his claim against Magee. Summary judgment is appropriate on her behalf.

Because the Court concludes that Magee, the sole medical defendant, did not violate Plaintiff's constitutional rights, CCS cannot be liable based on the theory that it established or maintained an unconstitutional policy or custom responsible for violating Plaintiff's rights. *See Goodrich v. Clinton Cty. Prison*, 214 F. App'x 105, 113 (3d Cir. Jan. 19, 2007) (stating policymakers not liable in prison medical staff's alleged deliberate indifference to prisoner's serious medical needs, where, given that there was no underlying violation of prisoner's rights, policy makers did not establish or maintain unconstitutional policy or custom responsible for violating prisoner's rights). Accordingly, summary judgment is also appropriate in favor of CCS.

In the interests of completeness, the Court will, nevertheless, address Plaintiff's contentions there was an unconstitutional delay in providing him physical therapy, and in the failure to provide him continuing medical treatment for his sciatic nerve condition. Plaintiff contends that CCS was aware he received physical therapy at Christiana Hospital, yet the VCC medical department refused to resume the treatment. The record reflects that when Plaintiff was discharged, the treatment plan did not provide for physical therapy; but stated "discontinue PT treatment." Plaintiff's position, however, is that "what doctor with knowledge of a patient having gunshot wounds to his left leg with injury's [sic] [like Plaintiff's] would not prescribe physical therapy knowing that the injury's [sic] could be repaired with proper and adequate medical treatment." (D.I. 96)

Apart from noting that physical therapy was discontinued, the record is far from clear as to whether any physician ordered physical therapy. At most, it appears that during Plaintiff's October 1, 2012 follow-up visit with an outside consultant, the plan was to refer him for an EMG and physical therapy or occupational therapy. According to Plaintiff's allegations, he received physical therapy from September 2, 2012 through January 2, 2013, a time-frame after the follow-up visit, and while he was still housed in the VCC infirmary.

Plaintiff was released from the VCC infirmary at the end of May 2013, received physical therapy exercises in late January 2014, and continued with physical therapy through June 30, 2014, when CCS's contract expired. While it appears there was a one-year gap in the physical therapy received, nothing in the record indicates this was motivated by non-medical factors or that there was a policy or custom to delay physical therapy. Nor has Plaintiff produced any evidence in this regard.

Plaintiff's other claim – that he did not receive continuing treatment for his sciatic nerve condition – is belied by the record. The medical records indicate that during the entire relevant time-frame, Plaintiff's medical condition was monitored and treated when necessary, including through diagnostic testing and medication. There is no evidence of record suggesting that any treatment decisions for Plaintiff's condition constituted "a substantial departure from accepted professional judgment, practice, or standards" such that a reasonable jury could conclude that medical personnel violated Plaintiff's constitutional rights. *See e.g., Youngberg v. Romeo,* 457 U.S. 307, 323 (1982).

No reasonable jury could conclude that any of the medical providers delayed or denied medical treatment to Plaintiff, engaged in a pattern of conduct indicating deliberate indifference to Plaintiff's serious medical need, or that there was a policy or custom to delay or deny medical treatment. Therefore, again, summary judgment will be granted to Medical Defendants.

## B. Exhaustion of Administrative Remedies

State Defendants seek summary judgment on the ground that Plaintiff failed to exhaust his administrative remedies as to the claims raised against them. Plaintiff did not file an opposition to their motion.

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). Failure to exhaust administrative remedies must be pled and proved by the defendant. *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

Under § 1997e(a), "an inmate must exhaust [administrative remedies] irrespective of the forms of relief sought and offered through administrative avenues." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). Under *Woodford v. Ngo*, 548 U.S. 81, 88 (2006), exhaustion means proper exhaustion, that is, "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court."

Defendants have met their burden to prove that Plaintiff failed to exhaust his administrative remedies as to the claims raised against them as evidenced by the unrefuted affidavit of Matthew Dutton. Dutton found no evidence in the DOC's records that Plaintiff submitted grievances regarding the alleged actions of Fisher, Glick, Malloy, or Farrington. There being no genuine issue

of material fact, summary judgment is appropriate for State Defendants.[3] Their motion will be granted.

## V. CONCLUSION

For the above reasons, the Court will grant Defendants' motions for summary judgment. (D.I. 88, 94) An appropriate Order will be entered.

---

[3] Because Plaintiff failed to exhaust his administrative remedies, the Court finds it unnecessary to address the other grounds for summary judgment raised by State Defendants.